# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZHONGSHAN FUCHENG INDUSTRIAL INVESTMENT CO. LTD., Room 05, Floor 15 Tower 5 Shangfeng Financial Business Center No. 88 Zhongshan 4th Road East District Zhongshan City China,<br><br>     Petitioner,<br><br> v.<br><br>THE FEDERAL REPUBLIC OF NIGERIA, c/o Hon. Geoffrey Onyeama Minister of Foreign Affairs The Ministry of Foreign Affairs of the Federal Republic of Nigeria Tafawa Balewa House Off Ahmadu Bello Way Central Business District Federal Secretariat Abuja Nigeria,<br><br>     Respondent. | Civil Action No. _____<br><br>**PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRAL AWARD** |

   Zhongshan Fucheng Industrial Investment Co. Ltd. ("**Petitioner**" or "**Zhongshan**"), by its undersigned attorneys, for its Petition to Recognize and Enforce a Foreign Arbitral Award, alleges as follows:

## INTRODUCTION

   1.  This is an action for recognition and enforcement of a foreign arbitral award dated March 26, 2021 that was rendered in London, United Kingdom (the "**Award**") and for judgment to be rendered thereon, pursuant to the Federal Arbitration Act (the "**FAA**"), 9 U.S.C. § 201 *et seq.*, implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21

U.S.T. 2517, T.I.A.A. 6997, 330 U.N.T.S. 3 (the "**New York Convention**").  A duly certified copy of the Award is attached as **Exhibit A** to the Declaration of Hussein Haeri dated January 20, 2022 (the "**Haeri Declaration**") filed in support of this Petition.

2. The Award was rendered in Petitioner's favor in an arbitration that Petitioner commenced against the Federal Republic of Nigeria ("**Respondent**" or "**Nigeria**") on August 30, 2018, pursuant to the Agreement between the Government of the People's Republic of China ("**PRC**") and the Government of the Federal Republic of Nigeria for the Reciprocal Promotion and Protection of Investments (the "**BIT**").  A true and correct copy of the BIT as on file with the United Nations Conference on Trade and Development is attached as **Exhibit B** to the Haeri Declaration.  The *ad hoc* arbitration took place under the rules of the United Nations Commission on International Trade Law and was seated in London, United Kingdom (the "**Arbitration**").

3. The Award was rendered on March 26, 2021.

4. To date, Respondent has not paid any sums due under the Award.

5. Accordingly, pursuant to 9 U.S.C. § 207, Petitioner respectfully requests that this Court:

   a. enter an order recognizing and enforcing the Award and enter judgment in Petitioner's favor ordering Respondent to pay:

      i. compensation damages in the sum of USD 55.6 million;

      ii. moral damages in the sum of USD 75,000;

      iii. pre-award interest in the sum of USD 9.4 million;

      iv. £2,509,789.57 (or US dollar equivalent) in respect of Zhongshan's legal and related costs of the arbitration;

> v. £354,655.17 (or US dollar equivalent) in respect of the other costs of the arbitration;
>
> vi. interest on the sums specified on all the amounts specified in sub-paragraphs (i) to (iii) above from the day after the Award until payment at the one month USD LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, USD LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to USD LIBOR plus 2%, compounded monthly, until and including the date of payment );
>
> vii. interest on the sums specified on all the amounts specified in sub-paragraphs (iv) and (v) above from the day after the Award until payment at the one month GBP LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, GBP LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered

equivalent to GBP LIBOR plus 2%, compounded monthly, until and including the date of payment);[1] and

    b. grant Petitioner such other and further relief as this Court deems just and proper.

## THE PARTIES

6. Petitioner Zhongshan Fucheng Industrial Investment Co. Ltd. is a Chinese-registered company and has its principal place of business at Room 05, Floor 15, Tower 5, Shangfeng Financial Business Center, No. 88 Zhongshan 4th Road, East District, Zhongshan City, PRC. Petitioner was initially established as the subsidiary of Zhuhai Zhongfu Industrial Group Co. Ltd ("**Zhuhai**"). Zhuhai is a large and successful Chinese bottling company that, *inter alia*, operates in Free Trade Zones in the PRC and in other countries.

7. Respondent the Federal Republic of Nigeria is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 9 U.S.C. §§ 203 and 207 since this action seeks recognition and enforcement of an award rendered in an arbitration falling under the New York Convention.

9. The Award is governed by the New York Convention because it arises out of a commercial legal relationship memorialized by a written agreement—including an agreement to arbitrate any disputes in London, United Kingdom (a contracting state to the New York Convention)—and at least one of the parties is not a citizen of the United States. *See* 9 U.S.C. § 202.

---

[1] For all of the aforementioned payments in US dollar equivalent, Petitioner respectfully requests that such payment be based on the exchange rate most favorable to Petitioner from the time that the Award was issued to the date of this Court's order or the date of payment.

10. This Court also has subject matter jurisdiction to recognize and enforce the Award against Respondent, a foreign state, pursuant to 28 U.S.C. § 1330(a) which states:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

11. Pursuant to 28 U.S.C. § 1605(a)(6), Respondent is not entitled to immunity in this proceeding since Petitioner is seeking to recognize and enforce a foreign arbitral award governed by the New York Convention.

12. This Court has personal jurisdiction over Respondent pursuant to 28 U.S.C. § 1330(b), where Petitioner is making service in accordance with 28 U.S.C. § 1608.

13. Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## FACTUAL BACKGROUND

### I. Summary of the Underlying Dispute

14. The facts leading up to the dispute between the parties are reflected in paragraphs 4-45 of the Award and are summarized below. (*See* Haeri Declaration, Ex. A.)

15. From approximately 2010-2016, Petitioner made substantial investments in Nigeria. Through its local subsidiary, Zhongfu International Investment (NIG) FZE ("**Zhongfu**"), it developed and managed Fucheng Industrial Park ("**Fucheng Park**") in the Ogun-Guangdong Free Trade Zone in Nigeria (the "**Zone**"), a free trade zone established in Ogun State in Nigeria as a joint venture to promote trade between the PRC and Nigeria.

16. Zhuhai originally acquired the right to develop and operate Fucheng Park within the Zone through the Agreement on Establishment of Fucheng Industrial Park in the Zone dated June 29, 2010 ("**the 2010 Framework Agreement**") entered into between Zhuhai and the Ogun Guangdong Free Trade Zone Company ("**OGFTZ**"). A deed dated October 10, 2010 (the "**2010 Deed**") among Zhuhai, OGFTZ, and Zhongshan had "the practical effect of transferring Zhuhai's rights and obligations under the 2010 Framework Agreement to Zhongshan[.]" (Award, ¶ 9.)

17. On September 28, 2013, Ogun State, Zhongfu and Zenith Global Merchant Limited entered into the Joint Venture Agreement For the Development, Management and Operation of the Zone ("**2013 JVA**").

18. Beginning in May 2016, and in breach of its obligations under the BIT, Nigeria took over Zhongshan's rights and assets and forcibly evicted its local subsidiary, Zhongfu, from the Zone, and consequently deprived Petitioner and Zhongfu of their rights under the 2010 Framework Agreement and/or the 2013 JVA.

19. On May 27, 2016, Ogun State wrongfully purported to terminate the 2013 JVA.

20. Subsequent to this wrongful termination, Respondent then mounted a campaign to threaten, harass, and evict Zhongfu from the Zone (including Fucheng Park) utilizing the police, Ogun State officials, and other governmental agencies.

**II.   The Arbitration Agreement in the BIT and the Arbitration**

21. A description of the BIT and arbitration proceedings is reflected in paragraphs 46-69 of the Award and is summarized below. (*See* Haeri Declaration, Ex. A.)

22. On September 21, 2017, Petitioner gave Respondent notice of a dispute in accordance with Article 9 of the BIT. The notice also contained a request to meet at Respondent's

earliest convenience to discuss the terms of an amicable settlement under the BIT. As evidenced in the Award, Petitioner did not receive any response to the notice. (*See* Award, ¶ 81.)

23. On August 30, 2018, Petitioner commenced the Arbitration, seeking damages for losses resulting from Respondent's violations of the BIT. Petitioner claims for Respondent's breaches of the BIT included:

 a. Respondent violated its obligation of fair and equitable treatment under Article 3(1) of the BIT;

 b. Respondent took unreasonable and discriminatory measures in violation of Article 2(3) of the BIT:

 c. Respondent failed to afford continuous / full protection and security in violation of Article 2(2) of the BIT;

 d. Respondent failed to observe the commitments entered into in violation of Article 10(2) of the BIT; and

 e. Respondent wrongfully expropriated Zhongshan's investments without compensation in violation of Article 4 of the BIT.

24. Petitioner and Respondent consented to arbitration. Respondent consented to the submission of a claim to arbitration pursuant to Article 9 of the BIT which provides, in relevant part:

> (1) Any dispute between an investor of the other contracting Party and the other Contracting Party in connection with an investment in the territory of the other Contracting Party shall, as far as possible, be settled amicably through negotiations between the parties to the dispute.
>
> (2) If the dispute cannot be settled through negotiations within six months, the [sic.] either party to the dispute shall be entitled to submit the dispute to the competent court of the Contracting Party accepting the investment.
>
> (3) If a dispute cannot be settled within six months after resort to negotiations as specified in Paragraph 1 of this Article it may be submitted

7

at the request of either Party to an ad hoc arbitral tribunal. The provisions of this Paragraph shall not apply if the investor concerned has resorted to the procedure specified in Paragraph 2 of this Article.

25. In turn, on August 30, 2018, Zhongshan consented to arbitration by filing its Request for Arbitration. It showed that the requirements for jurisdiction and admissibility in Article 9 of the BIT had been satisfied:

   a. A dispute existed between Zhongshan (a national of one Contracting Party, the PRC) and Nigeria (the other Contracting Party);

   b. The dispute arose in connection with Zhongshan's investments in Nigeria; and

   c. Zhongshan provided Nigeria with a notice of dispute on September 21, 2017 in accordance with Article 9 of the BIT. The notice also contained a request to meet at Nigeria's earliest convenience to discuss the terms of an amicable settlement under the BIT. As evidenced in the Award, Zhongshan did not receive any response to the notice. Thus, the parties were unable to settle their dispute amicably within six months.

26. Respondent appeared and participated in the Arbitration. In the context of the Arbitration, Respondent challenged the Tribunal's jurisdiction on the basis of a number of arguments. Specifically, Respondent asserted that:

   a. Zhongshan's claims were not concerned with the conduct of Nigeria (but of one of the constituent states of Nigeria) and therefore that no claim lay against Nigeria in international law;

   b. Zhongshan did not hold an "investment" within the meaning of article 1(1) of the BIT;

   c. The six-month "cooling-off" period required by article 9(3) of the BIT was not properly observed, meaning Zhongshan could not commence the Arbitration;

  d. Two sets of proceedings brought by Zhongfu in Nigeria in 2016 (the "**Nigerian Proceedings**") triggered a "fork-in-the-road" provision at article 9(3) of the BIT and acted as a bar to the Tribunal's jurisdiction;

  e. Zhongshan's claim could not be adjudicated without the involvement of the PRC government in the Arbitration; and

  f. Zhongshan could not base any part of its claim on the conduct of Nigerian courts since it had failed to pursue an appeal.

27. A hearing took place from November 9-13, 2020.  (*See* Award, ¶ 69.)

## III. The Final Award

28. On 26 March 2021, the Tribunal rendered its Award.

29. The Tribunal considered Respondent's arguments with respect to jurisdiction at some length and rejected them all.  Taking each of the above arguments in turn, the Tribunal held, *inter alia*, that:

  a. Zhongshan had a valid claim against Nigeria since the actions of Nigerian State organs are attributable to Nigeria for the purposes of State responsibility.  On the same basis, the Tribunal dismissed Nigeria's subsidiary objection that Zhongshan's case was based on contractual breaches rather than BIT breaches.

  b. Zhongshan had made a qualifying investment within the meaning of Article 1(1) of the BIT.

  c. Zhongshan had complied with the six-month waiting period since "it would be contrary to justice if Nigeria could rely on its own failure to take up the invitation to negotiate in order to say that Zhongshan had failed to allow for a sufficient negotiating period." (Award, ¶ 81.)

  d. The fact that Zhongfu had pursued court proceedings in Nigeria did not preclude Zhongshan from pursuing the Arbitration in accordance with Articles 9(2) and 9(3) of the BIT.

  e. There was no need to request evidence from the PRC since Nigeria's actions fell within the scope of the BIT and Zhongshan was therefore entitled to proceed with the Arbitration. Nigeria had also failed to approach any representatives from the PRC to provide evidence in the Arbitration.

  f. The evidence as to what Zhongfu should have done to appeal domestic court proceedings was not relevant to the Tribunal's determination, meaning no definitive conclusion was drawn as to the possibility of an appeal in the domestic proceedings.

30. On the above basis, the Tribunal concluded, in its Award, that it had jurisdiction to hear the dispute.

31. With respect to Petitioner's claims in the Arbitration, the Tribunal found, *inter alia*, that Respondent breached:

  a. Article 2(2) of the BIT (which contains a "continuous protection" standard) because it supported threats against Zhongshan, Zhongfu and their employees, and helped carry those threats into effect;

  b. Article 2(3) of the BIT (which contains a prohibition on unreasonable or discriminatory measures) because State bodies took actions for which there were no apparently justifiable grounds in domestic law with the aim of evicting Zhongfu from the Zone, and

engaged in illegal conduct or threats of illegal conduct towards Zhongfu and its employees;

c. Article 3(1) of the BIT (which contains a requirement that Nigeria accord "fair and equitable treatment" to investors) because there was a lack of due process in its conduct, including in the threats made by State officials to individuals, the "peremptory requirements to vacate", and the unnecessary use of police; and

d. Article 4 of the BIT (which contains a prohibition against unlawful expropriation) because Nigeria expropriated Zhongshan's investment without a public interest for that expropriation, without following domestic legal procedure, in a discriminatory manner and without paying fair (or any) compensation.

32. Petitioner refers to paragraphs 121-132 of the Award for full details of the Tribunal's analysis regarding Respondent's breaches of the BIT.

33. On the basis of these breaches of the BIT, the Tribunal ordered Nigeria to pay Zhongshan:

a. compensation for the expropriation in the sum of USD 55.6 million;

b. moral damages in the sum of USD 75,000;

c. interest on the aforesaid two sums from 22nd July 2016 at the one-month USD LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of the award, in the sum of USD 9.4 million;

d. in respect of the Claimant's legal and related costs of the arbitration, the sum of £2,509,789.57;

e. £354,655.17 in respect of the other costs of the arbitration;

f. post-Award interest on the sums specified on all the amounts specified in sub-paragraphs 33(a)-(c) above from the day after the Award until payment—the Award stipulated that this post-Award interest should be calculated "at the one month USD LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, USD LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to USD LIBOR plus 2%, compounded monthly, until and including the date of payment)".

g. post-Award interest on the sums specified on all the amounts specified in sub-paragraphs 33(d)-(e) above from the day after the Award until payment—the Award stipulated that this post-Award interest should be calculated "at the one month GBP LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, GBP LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to GBP LIBOR plus 2%, compounded monthly, until and including the date of payment)."

34. To date, Respondent has not complied with the Award and has not paid any part of the sums so awarded.

### IV. RESPONDENT'S ENGLISH CHALLENGE AND ITS DISCONTINUANCE

35. On April 23, 2021, Respondent filed an arbitration claim form in the English High Court seeking to challenge the Award under the English Arbitration Act, on the purported basis that the Tribunal lacked jurisdiction to render the Award (the "**English Challenge**"). (*See* Haeri Decl., ¶ 5.) A true and correct copy of the English Challenge is attached as **Exhibit C** to the Haeri Declaration.

36. In summary, Respondent contended that:

   a. The arbitration agreement in the BIT was invalid. Nigeria gave no explanation as to the legal or factual basis for this assertion (which was made for the first time in the context of the English Challenge).

   b. Zhongshan failed to make a qualifying "investment" within the meaning given to that word by the BIT (the same argument which Nigeria had raised and the Tribunal had rejected in the Arbitration).

   c. The Nigerian Proceedings deprived the Tribunal of jurisdiction over the Arbitration under Article 9(3) of the BIT (again, an argument which Nigeria had raised and the Tribunal had rejected in the Arbitration).

(*See* Haeri Decl., ¶ 6.)

37. On June 9, 2021, Zhongshan filed its response to the English Challenge. (*See* Haeri Decl., ¶ 7.) In summary, Zhongshan opposed the English Challenge on the basis that:

   a. Nigeria did not and could not identify any basis on which to suggest that the BIT or its arbitration agreement is invalid;

      b.  There is significant evidence showing that Zhongshan made an investment in Nigeria;

      c.  The Nigerian Proceedings are separate and distinct from Zhongshan's claim under the BIT.

      d.  Moreover, Nigeria had a full opportunity to argue the above points before the Tribunal, both in writing and orally. The Tribunal considered arguments made by Nigeria before it at length and rejected them.

(*See id.*)

38.    On June 18, 2021, Zhongshan filed an application for security for costs and an application for security for the Award. Nigeria did not respond to those applications. (*See* Haeri Decl., ¶ 8.)

39.    On October 11, 2021, four days before the hearing of Zhongshan's application for security for costs, Nigeria filed a notice to discontinue the English Challenge. (*See* Haeri Decl., ¶ 9.) A true and correct copy of Nigeria's notice of discontinuance of the English Challenge is attached as **Exhibit D** to the Haeri Declaration.

40.    On November 3, 2021, the parties reached an agreement for Nigeria to pay Zhongshan's costs of, and arising from, the English Challenge in the sum of GBP 175,000. (*See* Haeri Decl., ¶ 10.) An order of the English High Court was issued to this effect on November 4, 2021 requiring Nigeria to pay the agreed sum by 4pm on December 1, 2021. (*See id.*) In breach of this order, Nigeria paid only GBP 100,000 by the deadline. On December 2, 2021, Nigeria paid a further GBP 35,000. (*See id.*) On December 3, 2021, Nigeria paid a further GBP 25,000. On December 7, 2021, Nigeria paid the remaining GBP 15,000 due. (*See id.*)

41. On November 8, 2021, following the discontinuance of the English Challenge, Petitioner invited Respondent to pay the sums awarded in the Award. No response was forthcoming. (*See* Haeri Decl., ¶ 11.) A true and correct copy of this November 8, 2021 correspondence is attached as **Exhibit E** to the Haeri Declaration. On November 26, 2021, Petitioner sent a second invitation for Respondent, which also received no answer. (*See* Haeri Decl., ¶ 11.) A true and correct copy of this November 26, 2021 correspondence is attached as **Exhibit F** to the Haeri Declaration.

42. On December 8, 2021, Petitioner commenced enforcement proceedings against Respondent in the UK court. (*See* Haeri Decl., ¶ 12.) On December 21, 2021, the English court issued an order recognizing the Award. This order will be served on Nigeria by Petitioner's English counsel. (*See id.*)

43. As of the date of this Petition, Respondent still has not paid any part of the Award. (*See* Haeri Decl., ¶ 13.)

## CLAIM FOR RELIEF

**(Recognition and Enforcement of the Award under 9 U.S.C. § 207)**

44. Petitioner repeats and re-alleges paragraphs 1 through 43 as if fully set forth herein.

45. The Award is a binding arbitration award and was rendered in Petitioner's favor.

46. The Award is governed by the New York Convention because it arises out of a commercial legal relationship between Zhongshan and Nigeria and was rendered following an arbitration in London, United Kingdom (a contracting state to the New York Convention)—and at least one of the parties is not a citizen of the United States. *See* 9 U.S.C. § 202.

47. As of the date of this Petition, Respondent has not complied with the Award.

48. The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

49. The Award has not been set aside or suspended by a court in the United Kingdom, the competent authority of the country in which and under the law of which the Award was made.

50. None of the grounds available for refusal or deferral of recognition or enforcement of an award specified in the New York Convention are applicable to the Award.

51. Pursuant to 9 U.S.C. § 207, Petitioner has brought this action within three years after the Award was made on March 26, 2021.

52. Under the terms of the Award, Respondent was ordered to pay:

   a. compensation for the expropriation in the sum of USD 55.6 million;

   b. moral damages in the sum of USD 75,000;

   c. interest on the aforesaid two sums from 22nd July 2016 at the one-month USD LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of the award, in the sum of USD 9.4 million;

   d. in respect of the Claimant's legal and related costs of the arbitration, the sum of £2,509,789.57;

   e. £354,655.17 in respect of the other costs of the arbitration;

   f. post-Award interest on the sums specified on all the amounts specified in sub-paragraphs 52(a)-(c) above from the day after the Award until payment—the Award stipulated that this post-Award interest should be calculated "at the one month USD LIBOR rate plus 2 per cent for each year, or proportion thereof,

       such interest to be compounded monthly, until and including the date of payment (and should, for any reason, USD LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to USD LIBOR plus 2%, compounded monthly, until and including the date of payment)."

    g.  post-Award interest on the sums specified on all the amounts specified in sub-paragraphs 52(d)-(e) above from the day after the Award until payment—the Award stipulated that this post-Award interest should be calculated "at the one month GBP LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, GBP LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to GBP LIBOR plus 2%, compounded monthly, until and including the date of payment)."

53.    By reason of the foregoing, pursuant to 9 U.S.C. § 207, Petitioner respectfully requests that the Court recognize and enforce the Award and enter judgment in favor of Petitioner and against Respondent in the amount of the Award and as reflected in the accompanying proposed order.

**WHEREFORE**, Petitioner Zhongshan Fucheng Industrial Investment Co. Ltd. respectfully requests that the Court:

a) recognize and enforce the Award against Respondent the Federal Republic of Nigeria pursuant to 9 U.S.C. § 207;

b) enter a judgment in Petitioner Zhongshan Fucheng Industrial Investment Co. Ltd.'s favor and against Respondent the Federal Republic of Nigeria ordering the payment of the following:

   i. compensation damages in the sum of USD 55.6 million;

   ii. moral damages in the sum of USD 75,000;

   iii. pre-award interest in the sum of USD 9.4 million;

   iv. £2,509,789.57 (or US dollar equivalent) in respect of Zhongshan's legal and related costs of the arbitration;

   v. £354,655.17 (or US dollar equivalent) in respect of the other costs of the arbitration;

   vi. interest on the sums specified on all the amounts specified in sub-paragraphs (i) to (iii) above from the day after the Award until payment at the one month USD LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, USD LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to USD LIBOR plus 2%, compounded monthly, until and including the date of payment);

   vii. interest on the sums specified on all the amounts specified in sub-paragraphs (iv) and (v) above from the day after the Award until payment at the one

month GBP LIBOR rate plus 2 per cent for each year, or proportion thereof, such interest to be compounded monthly, until and including the date of payment (and should, for any reason, GBP LIBOR cease to be operative while any amount remains outstanding, the interest due shall from that date onward be calculated on the basis of whatever rate is generally considered equivalent to GBP LIBOR plus 2%, compounded monthly, until and including the date of payment); and

c) grant Petitioner Zhongshan Fucheng Industrial Investment Co. Ltd. such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 25, 2022

By: /s/ Steven Moore
Steven Moore, D.C. Bar No. CT0012
WITHERS BERGMAN LLP
1700 East Putnam Avenue
Suite 400
Greenwich, Connecticut 06870
Telephone: (203) 302-4100
Fax: (203) 302-6609
Steven.Moore@withersworldwide.com

Emma Lindsay (*pro hac vice* pending)
Jovana Crncevic (*pro hac vice* pending)
WITHERS BERGMAN LLP
430 Park Avenue
New York, New York 10022
Telephone: (212) 848-9800
Fax: (212) 848-9888
Emma.Lindsay@withersworldwide.com
Jovana.Crncevic@withersworldwide.com

*Counsel for Petitioner Zhongshan Fucheng Industrial Investment Co. Ltd.*