# EXHIBIT B

# Agreement Between the Government of the People's Republic of China and the Government of the Federal Republic of Nigeria for the Reciprocal Promotion and Protection of Investments

Department of Treaty & Law

The Government of the People's Republic of China and the Government of the **Federal Republic of Nigeria** (hereinafter referred to as "the Contracting Parties"),

Recognizing that the reciprocal encouragement, promotion, and protection of such investments will be conducive to stimulating business initiative of the investors and will increase prosperity in both States,

Recognizing investor's duty to respect the host country's sovereignty and laws;

Desiring to intensify the cooperation of both States on the basis of equality and mutual benefits;

Determined to create favourable conditions for greater investment by investors of one Contracting Party in the territory of the other Contracting Party;

Have agreed as follows:

**Article 1 DEFINITIONS**

For the purpose of this Agreement,

1. The term "investment" means every kind of asset invested by investors of one Contracting Party in accordance with the laws and regulations of the other Contracting Party in the territory of the latter, and in particular, though not exclusively, includes:

(a) movable and immovable property as well as any property rights, such as mortgages, liens and pledges;

(b) shares, debentures, stock and any other kind of participation in companies;

(c) claims to money or to any other performance having an economic value associated with an investment;

(d) intellectual property rights, in particular copyrights, patents, trade-marks, trade-names, technical process, know-how and good-will; and

(e) business concessions conferred by law or under contract permitted by law, including concessions to search for, cultivate, extract or exploit natural resources.

2. The term "investor" include nationals and companies of both Contracting Parties :

(a) "nationals" means, with regards to either Contracting Party, natural persons having the nationality of that Contracting Party;

(b) "companies" means, with regards to either Contracting Party, corporations, firms and associations incorporated or constituted under the law in force in the territory of the Contracting Party.

3. The term "return" means the amounts yielded from investments such as profits, dividends, interests, capital gains, royalties and fees;

4. The term "territory" means the land area, the inland area, the territorial sea of the Contracting Party, as well as continental shelf and the exclusive economic zone over which the State concerned exercises, in accordance with international law, sovereign and jurisdictional rights.

### Article 2  PROMOTION AND PROTECTION OF INVESTMENTS

1. Each Contracting Party shall promote economic cooperation and encourage investors of the other Contracting Party to make investments in its territory and admit such investments in accordance with its laws and regulations.

2. Investments of the investors of either Contracting Party shall enjoy the continuous protection in the territory of the other Contracting Party.

3. Subject to its laws and regulations, neither Contracting Party shall take any unreasonable or discriminatory measures against the management, maintenance, use, enjoyment and disposal of the investments by the investors of the other Contracting Party.

4. Each Contracting Party shall endeavor to provide assistance in obtaining visas and working permit to nationals of the other Contracting Party engaging in activities associated with investments made in the territory or that Contracting Party.

### Article 3  TREATMENT OF INVESTMENTS

1. Investments of investors of each Contracting party shall all the time be accorded fair and equitable treatment in the territory of the other Contracting Party.

2. Without prejudice to its laws and regulations, each Contracting Party shall accord to investments and activities associated with such investments by the investors of the other Contracting Party treatment not less favorable than that accorded to the investments and associated activities by its own investors.

3. Neither Contracting Party shall subject investments and activities associated with such investments by the investors of the other Contracting Party to treatment less favorable than that accorded to the investments and associated activities by the investors of any third State.

4. The provisions of Paragraph 1 to 3 of the Article shall not be construed so as to oblige one Contracting party to extend to the investors of the other Contracting Party the benefit of any treatment, preference or privilege by virtue of:

(a)  any customs union, free trade zone, economic union and any international agreement resulting in such customs union, free trade zone, economic union; and

(b)  any international agreement or arrangement relating wholly or mainly to taxations;

### Article 4  EXPROPRIATION

1. Neither Contracting Party shall expropriate, nationalize or take similar measures (hereinafter referred to as "expropriation") against the investments of investors of the other Contracting Party in its territory, unless the following conditions are met:

(a) for the public interests;

(b) under domestic legal procedure;

(c)  without discrimination;

(d)  against fair compensation.

2. The compensation mentioned in Paragraph 1 (d) of this Article shall be equivalent to the value of the expropriated investments immediately before the expropriation is proclaimed, be convertible and freely transferable. The compensation shall be paid without unreasonable delay and include interest at a normal commercial rate.

### Article 5  COMPENSATION FOR DAMAGES ANS LOSSES

Investors of one Contracting Party whose investments in the territory of the other Contracting Party suffer losses owing to war, a state of national emergency, insurrection,

riot or other similar events in the territory of the latter Contracting Party, shall be accorded by the latter Contracting Party, as regards restitution, indemnification, compensation and other settlements no less favorable that accorded to the investors of its own or any third State.

### Article 6  PEPATRIATION OF INVESTMENTS AND RETURNS

1. Each Contracting Party shall, subject to its laws and regulations, guarantee to the investors of the other Contracting Party the transfer of their investments and returns held in its territory, including:

(a) profits, dividends, interests and other legitimate income;

(b) proceeds obtained from the total or partial or liquidation of investments;

(c) payments pursuant to a loan agreement in connection with investments;

(d) royalties;

(e) payments of technical assistance or technical service fees, management fee;

(f) payments in connection with contracting projects;(g) earnings of nationals of the other Contracting Party.

2. The transfer mentioned above shall be made in freely convertible currency.

### Article 7  SUBROGATION

If one Contracting Party or its Agency makes a payment to an investor under guarantee it has granted to an investment of such investor in the territory of the other Contracting Party, such other Contracting Party shall recognize the assignment of any the right or claim of such investor to the former Contracting Party or its Agency and recognize the subrogation of the former Contracting Party or its Agency to such right or claim. The subrogated right or claim shall not be greater than the original right or claim of the said investor.

### Article 8  SETTLEMENT OF DISPUTES BETWEEN CONTRACTING PARTIES

1. Any dispute between the Contracting Parties concerning the interpretation or application of provisions of this Agreement shall be settled through diplomatic channels.

2. Where the Contracting Parties cannot reach an agreement with twelve months, the dispute shall, upon request of either Contracting Party, be submitted toan arbitral tribunal of three members. Each Contracting Party shall appoint one arbitrator, and those two arbitrators shall nominate a third arbitrator who shall be a national of a third State with diplomatic relations with the Contracting Parties. The third arbitrator shall be appointed by the two Contracting Parties as the Chairman of the arbitral tribunal.

3. Where one of the Contracting Parties has not appointed its arbitrator and followed the invitation of the other Contracting Party to make that appointment within two months, the arbitrator shall be appointed upon the request of the latter Contracting Party by the President of the International Court of Justice.

4. Where the Chairman of the arbitral tribunal has not been constituted within two months after the appointment of the two arbitrators and in the absence of any other agreement, the Chairman shall be appointed upon the request of either Contracting Party by the President of the International Court of Justice.

5. Where in the case specified under paragraph (3) and (4) of this Article, the President of International Court of Justice. Is a national of either Contracting Party or is otherwise prevented from carrying out the said function, the appointment shall be made by the Vice-President is a national of either Contracting Party or is otherwise prevented from discharging the said function, the appointment shall be made by the most senior Judge of the Court who is not a national of either Contracting Party.

6. The arbitral tribunal shall determine its procedure.

7. Each Contracting Party shall bear the costs of its appointed arbitrator and of its representation in arbitral proceedings. The relevant costs of the Chairman and the tribunal shall be borne in equal parts by the Contracting Parties.

8. The decisions of the tribunal are final and biding on the Contracting Parties.

**Article 9 SETTLEMENT OF DISPUTES BETWEWEEN INVESTORS AND ONE CONTRACTING PARTY**

1. Any dispute between an investor of the other contracting Party and the other Contracting Party in connection with an investment in the territory of the other Contracting Party shall, as far as possible, be settled amicably through negotiations between the parties to the dispute.

2. If the dispute cannot the settled through negotiations within six months, the either Party to the dispute shall be entitled to submit the dispute to the competent court to the Contracting Party accepting the investment.

3. If a dispute cannot be settled within six months after resort to negotiations as specified in Paragraph 1 of this Article it may be submitted at the request of either Party to an ad hoc arbitral tribunal. The provisions of this Paragraph shall not apply if the investor concerned has resorted to the procedure specified in Paragraph 2 of this Article.

4. Such an ad hoc arbitral tribunal shall be constituted for each individual case in the following way: each Party to the dispute shall appoint one arbitrator, and these two shall select a national of a third State which has diplomatic relations with the two Contracting Parties as the Chairman. The first two arbitrators shall be appointed within two months of the written notice for arbitration by either party to the dispute to the other, and the Chairman shall be selected within four months. If within the period specified above, the tribunal has not been constituted, either Party to the dispute may invite the Secretary General of the International Center for Settlement of Investment Disputes to make the necessary appointments.

5. The tribunal shall determine its own procedure. However, the tribunal may, in the course of determination of procedure, take as guidance the Arbitration Rules of International Center for Settlement of Investment Disputes.

6. The tribunal shall reach its decision by a majority of votes. Such decision shall be final and binding upon both parties to the dispute. Both Contracting Parties shall commit themselves to the enforcement of the award.

7. The tribunal shall adjudicate in accordance with the law of the Contracting Party to the dispute accepting the investment including its rules on the conflict of laws, the

provisions of this Agreement as well as the generally recognized principles of international law accepting by both Contracting Parties.

8. Each Party to the dispute shall bear the costs of its appointed member of the arbitral and of its representation in the proceedings. The cost of the appointed Chairman and the remaining costs shall be borne in equal parts by the parties to the dispute.

## Article 10 OTHER OBLIGATIONS

1. If the legislation of either Contracting Party or international obligations existing at the present or established hereafter between the Contracting Parties result in a position entitling investments by investors of the other Contracting Party to a treatment more favorable than is provided for by this Agreement, such position shall not be affected by this Agreement.

2. Each Contracting Party shall observe any commitments it may have entered into with the investors of the other Contracting Party as regards to their investments.

## Article 11  APPLICATION

This Agreement shall apply to investments, which are made prior to or after its entry into force by investors of either Contracting Party in accordance with the laws and regulations of the other Contracting Party in the territory of the latter.

## Article 12 CONSULTATIONS

1. The representatives of the Contracting Parties shall hold meetings from time to time for the purpose of:

   (a) reviewing the implementation of this Agreement;

   (b) exchanging legal information and investment opportunities;

   (c) resolving disputes arising out of investments;

   (d) forwarding proposals on promotion of investment;

   (e) studying other issues in connection with investments.

2. Where either Contracting Party requests consultation on any matters of Paragraph 1 of this Article, the other Contracting Party shall give prompt response and the consultation be held alternatively in Beijing,China and Abuja, Nigeria.

## Article 13 AMENDMENT OR REVISION

Any amendment to or revision of this Agreement shall be in writing and shall come into force when confirmed by both Contracting Parties in an Exchange of Notes through diplomatic channel.

## Article 14  ENTRY INTO FORCE, DURATION AND TERMINATION

1.  This Agreement shall enter into force on which both Contracting Parties have notified each other in writing that their respective internal legal procedures thereof have been completed with and  remain in force for a period of ten years.

2. This Agreement shall continue in force if either Contracting Party fails to give a written notice to the other Contracting Party to terminate this Agreement one year before the expiration of the period specified in Paragraph 1 of this Article.

3. After the expiration of initial ten years period, either Contracting Party may at any time thereafter terminate this Agreement by giving at least one year's written notice to the other Contracting Party.

4. With respect to investments made prior to the date of termination of this Agreement, the provisions of Article 1 to 13 shall continue to be effective for a further period of ten years from such date of termination.

IN WITNESS WHEREOF, the duly authorized representatives of their respective Governments, have signed this Agreement.

Done in duplicate in Beijing on 27th August2001 in two originals in  Chinese and English languages, both texts being equally authentic.

| | |
|---|---|
| SUN GUANGXIANG | CHIEF KOLA JAMODU, MFR |
| Honourable Vice Minister of Foreign Trade and Economic | Honourable Minister of Industry |

| | |
|---|---|
| Cooperation<br>For and on behalf of the Government<br>of the People's Republic of China | For and on behalf of the Government<br>of the Federal Republic of Nigeria |